**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(NORTHERN DIVISION)

| | | |
|---|---|---|
| THE AMERICAN NATIONAL RED CROSS, | : | |
| 431 18th Street, NW | : | |
| Washington, DC 20006 | : | |
| | : | CIVIL ACTION NO.: |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| THE WORLD INSTITUTE OF SAFETY LLC, | : | **JURY TRIAL DEMANDED** |
| 20 S. Charles Street, Ste 402 | : | |
| Baltimore, MD 21201 | : | |
| | : | |
| SERVE ON: | : | |
| George Barnes | : | |
| 20 S. Charles Street, Ste 402 | : | |
| Baltimore, MD 21201 | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

## COMPLAINT

The American National Red Cross ("the Red Cross"), by counsel, sets forth its complaint against The World Institute of Safety LLC ("WIOS") as follows:

### PARTIES

1.      The Red Cross is a not-for-profit corporation operating under a Congressional Charter, which is codified at 36 U.S.C. § 300101, *et seq.*, and has its principal place of business within the District of Columbia. Throughout the United States, including in Maryland, the Red Cross provides humanitarian services, including disaster relief, blood supply and other blood-related services for hospitals and patients. It also provides courses on lifesaving skills such as first aid, CPR, and lifeguarding, using highly-regarded curricula and training methods. It issues American Red Cross certificates to students who successfully complete

these courses.  Students present these certificates to employers as evidence that they have successfully completed an American Red Cross training course.

2.       Upon information and belief, WIOS is a Maryland limited liability company with its principal place of business located in Baltimore, Maryland.  Upon information and belief, WIOS owns and operates enjoyCPR.com and alertcertified.com.  WIOS claims it is "a national safety training and preparedness organization that offers office/workplace safety classes, office safety assessments."

3.       Previously, WIOS was an authorized provider of American Red Cross courses.  It had a written agreement which granted WIOS permission to offer Red Cross training courses using the Red Cross name and emblem, subject to certain conditions including payment of fees. WIOS breached that agreement by failing to pay the required fees, among other things, and the Red Cross terminated the agreement in October 2018.  Nevertheless, WIOS is continuing to hold itself out as an authorized provider of Red Cross training courses and has improperly used the Red Cross name and emblem to create the false impression that it is affiliated with the Red Cross and issue fake course completion certificates.

## JURISDICTION AND VENUE

4.       Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1331 and 36 U.S.C. § 300105(a)(5), as this Court has original jurisdiction over all cases to which the Red Cross is a party.

5.       Subject matter jurisdiction is also proper in this Court under 28 U.S.C. § 1331, 28 U.S.C. § 1338(a) & (b), and 15 U.S.C. § 1121.  The Court also has supplemental jurisdiction over the Red Cross's state-law claims pursuant to 28 U.S.C. § 1367(a), as they are substantially related to the Red Cross's federal claims, and arise out of the same case or controversy.

6.      This Court can properly exercise personal jurisdiction over WIOS, as it is a Maryland limited liability company located in Baltimore, Maryland, which is within the Northern Division of the District of Maryland.

7.      Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) as WIOS resides within this division and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and division.

**FACTS AND BACKGROUND**

8.      The Red Cross is among the most famous and recognizable humanitarian organizations in the United States and in the world, led by volunteers, guided by its Congressional Charter and the Fundamental Principles of the International Red Cross Movement. It provides about 40% of the blood used by the nation's hospitals for life-saving transfusions, disaster relief and disaster preparedness education in the United States, and training and certification with respect to various life-saving activities such as CPR and first aid.  It is the largest and most prominent provider of disaster relief including shelter, food, health and mental health services, as well as providing education, community services, medical services, and emergency assistance inside the United States.

9.      The International Red Cross and Red Crescent Movement is one of the world's oldest and largest humanitarian organizations, founded in 1863.  The American National Red Cross, a non-profit, charitable institution, was founded on May 21, 1881 as the American Association of the Red Cross.  The American Red Cross was modeled upon the International Red Cross and Red Crescent Movement to serve the United States during times of peace and war by providing disaster relief, emergency aid, first aid training programs, medical, health and nursing services, humanitarian assistance, and other charitable support.

3

10.     In 1905, the United States government chartered the American Red Cross to fulfill this nation's obligations under the Geneva treaties pertaining to the humanitarian treatment of prisoners, civilians and wounded and sick soldiers during military conflict along with executing a system of national and international relief in time of peace. *See* 36 U S.C. § 300102. For over 100 years, the American Red Cross has provided public health and medical services and goods, emergency relief, first aid, nursing and other health and safety services to those in need in the United States.

11.     Since at least as early as 1881, the American Red Cross has used and continues to use its world famous name, RED CROSS and AMERICAN RED CROSS (together, the "Red Cross Name") and Greek red cross symbol (the "Red Cross Symbol", and together with the Red Cross Name, collectively referred to as the "Red Cross Marks") in connection with various goods and services, including without limitation, medical, dental, health, training and safety services, fundraising, nursing rescue services, blood collection, and disaster relief services.   A representative image of the Red Cross Symbol is depicted below in Figure 1:

**<u>Figure 1</u>**



12.     The Red Cross has trademark rights in Red Cross Marks that derive not only from federal and state trademark law but also international law and federal criminal law.

4

13.     In granting the Red Cross its charter, Congress gave the Red Cross the right to "have and use" the famous Red Cross Symbol.   36 U.S.C. § 300106.  Congress made clear that this trademark right is exclusive to the American Red Cross by subjecting any unauthorized user of the Red Cross Symbol to criminal penalties.  *See* 18 U.S.C. § 706.

14.     Specifically, in 1905, the United States Congress recognized the importance of protecting the Red Cross Marks from unauthorized use and granted the American Red Cross (along with its duly authorized employees and agents and the sanitary and hospital authorities of the armed forces of the United States) the exclusive right to use the words "Red Cross" and the Red Cross Symbol under 18 U.S.C. § 706, subject only to minor exceptions that do not apply here, which is known as the "Red Cross Statute."  The Red Cross Statute protects the Red Cross Emblem from unauthorized third-party use and states in part:

> Whoever, whether a corporation, association or person, other than the American National Red Cross and its duly authorized employees and agents and the sanitary and hospital authorities of the armed forces of the United States, uses the emblem of the Greek red cross on a white ground, or any sign or insignia made or colored in imitation thereof or the words "Red Cross" or "Geneva Cross" or any combination of these words--
>
> Shall be fined under this title or imprisoned not more than six months, or both.

15.     In recognizing such Congressional intent, the United States Patent and Trademark Office ("USPTO") provided special designations to the Red Cross Symbol and the word mark RED CROSS by memorializing exclusive ownership to the Red Cross under U.S. Serial Nos. 89/000,081 and 89/001,649 in connection with all international classes of goods and services on the Principal Register.

16.     Through the USPTO, the Red Cross owns numerous United States federal registrations for various versions of the Red Cross Symbol (with and without color claims) in connection with medical, health and safety goods and services, including, *inter alia,* U.S.

Registration Nos. 4,773,009 in Int'l Class 44 (nursing services); 2,740,133 in Int'l Class 36 (charitable fundraising); 2,771,239 in Int'l Class 44 (blood banks); 2,797,013 in Int'l Class 41 (educational services for health and safety); 2,818,967 in Int'l Classes 36 (assistance to victims of disasters) and 43 (relief and support to victims of disasters); 5,793,662 in Int'l Class 25 (clothing); 4,612,315 in Int'l Class 9 (mobile application for first aid information and disaster preparedness); 4,319,642 in Int'l Class 35 (public interest promotion of humanitarian services, blood collection, emergency preparedness and response, health and safety); 5,793,664 in Int'l Class 25 (clothing); and 4,612,314 in Int'l Class 9 (mobile application for first aid information and disaster preparedness).

| Mark | Registration No. Registration Date | Products/Services First Use in Commerce |
|---|---|---|
| <br>Mark Description:  The mark consists of a red cross. | 2740133<br>07/22/2003 | Charitable fundraising in Int'l Class 36<br>First Use in Commerce:  12-31-1881 |
| <br>Mark Description:  The mark consists of a red cross. | 2818967<br>03/02/2004 | Charitable services, namely, providing financial assistance and support to victims of disasters and providing information consultation related thereto in Int'l Class 36<br>First Use in Commerce:  12-31-1881<br><br>Charitable services, namely, providing relief and support to victims of disasters by providing food and temporary housing shelters and information and consultation related thereto in Int'l Class 43<br>First Use in Commerce:  12-31-1881 |

| Mark | Registration No.<br>Registration Date | Products/Services<br>First Use in Commerce |
|---|---|---|
| Mark Description:  The mark consists of a red cross. | 2797013<br>12/23/2003 | Educational services, namely training in the areas of health and safety in Int'l Class 41<br>First Use in Commerce:  12-31-1903 |
| Mark Description: The mark consists of a red Greek cross.<br>Color Claimed: Red | 4773009<br>07/14/2015 | Nursing services in Int'l Class 44<br>First Use in Commerce:  00-00-1909 |
| Mark Description:  The mark consists of a red cross. | 2771239<br>10/07/2003 | Blood banks, collection and preservation of human blood in Int'l Class 44<br>First Use in Commerce:  12-31-1938 |
| Mark Description: The mark consists of a Greek cross appearing on a novelty button-style image.<br>Color is not a claimed feature. | 4319642<br>04/16/2013 | Promoting public interest and awareness of the need for humanitarian services in the fields of blood collection and donation, disaster and emergency preparedness and response, health and safety, and support for the armed forces; charitable services, namely, organizing and conducting volunteer programs and community service projects in the fields of blood collection and donation, disaster and emergency preparedness and response, health and safety, and support for the armed forces; charitable services, namely, providing administrative coordination of |

| Mark | Registration No.<br>Registration Date | Products/Services<br>First Use in Commerce |
|---|---|---|
| | | humanitarian services in the fields of blood collection and donation, disaster and emergency preparedness and response, health and safety, and support for the armed forces; charitable services, namely, providing consulting services related to the administrative coordination of organizations providing humanitarian services in the fields of blood collection and donation, disaster and emergency preparedness and response, health and safety, and support for the armed forces in Int'l Class 35<br>First Use in Commerce:  10-14-2011<br><br>Charitable fundraising in Int'l Class 36<br>First Use in Commerce:  11-28-2011 |
| <br><br>Mark Description: The mark consists of a Greek cross appearing on a novelty button-style image.<br>Color is not a claimed feature | 4612314<br>09/30/2014 | Downloadable mobile applications for providing and sharing volunteer information, volunteer opportunities and volunteer recovery information in the field of disaster preparedness and disaster relief; downloadable mobile applications for providing information regarding disaster preparedness, storm tracking, and relief and recovery information; downloadable mobile applications for providing and sharing tools for disaster preparedness and relief and recovery information, namely, providing audible alerts and audible sirens for activation in an emergency, flashlights, shelter and hospital locators, safety notifications sent via e-mail, text message, and social networks; downloadable mobile applications providing first aid information; downloadable mobile applications providing first aid information for pets; and downloadable mobile applications providing first aid tools, namely, videos, interactive quizzes, step-by-step instructions for rendering first aid, click-to-call capabilities to access emergency |

| Mark | Registration No. Registration Date | Products/Services First Use in Commerce |
|---|---|---|
| | | telephone numbers in Int'l Class 9 First Use in Commerce:  06-14-2012 |
| Mark Description: The mark consists of a Greek cross in the color red. Color Claimed: Red | 4612315 09/30/2014 | Downloadable mobile applications for providing and sharing volunteer information, volunteer opportunities and volunteer recovery information in the field of disaster preparedness and disaster relief; downloadable mobile applications for providing information regarding disaster preparedness, storm tracking, and relief and recovery information; downloadable mobile applications for providing and sharing tools for disaster preparedness and relief and recovery information, namely, providing audible alters and audible sirens for activation in an emergency, flashlights, shelter and hospital locators, safety notifications sent via email, text message, and social networks; downloadable mobile applications providing first aid information; downloadable mobile applications providing first aid information for pets; and downloadable mobile applications providing first aid tools, namely, videos, interactive quizzes, step-by-step instructions for rendering first aid, click-to-call capabilities to access emergency telephone numbers in Int'l Class 9 First Use in Commerce:  06-14-2012 |
| Mark Description: The mark consists of a red Greek cross. Color Claimed: Red | 5793662 07/02/2019 | Clothing, namely, Aprons, Baby bodysuits, Baseball caps and hats, Beanies, Blazers, Boots, Bucket hats, Cap visors, Caps, Cardigans, Down jackets, Dress shirts, Fleece jackets, Fleece vests, Hats, Hoodies, Jackets, Knit jackets, Knitted caps, Long-sleeved shirts, Neck gaiters, Neckties, Pants, Polo shirts, Pullovers, Quilted vests, Scarfs, Shell jackets, Shirts, Shoes, Shorts, Short-sleeved shirts, Sport shirts, Sweaters, Sweatpants, Sweatshirts, Swim caps, T-shirts, Uniforms, Vests, Waterproof |

| Mark | Registration No.<br>Registration Date | Products/Services<br>First Use in Commerce |
|---|---|---|
| | | jackets, Wind shirts, Windbreakers in Int'l Class 25<br>First Use in Commerce:  00-00-1911 |
| <br><br>Mark Description: The mark consists of a red Greek cross inside a white circle. The color gray in the background represents transparent area and is not part of the mark.<br>Color Claimed: Red and White | 5793664<br>07/02/2019 | Clothing, namely, Aprons, Baby bodysuits, Baseball caps and hats, Beanies, Blazers, Boots, Bucket hats, Cap visors, Caps, Cardigans, Down jackets, Dress shirts, Fleece jackets, Fleece vests, Hats, Hoodies, Jackets, Knit jackets, Knitted caps, Long-sleeved shirts, Neck gaiters, Pants, Polo shirts, Pullovers, Quilted vests, Scarfs, Shell jackets, Shirts, Shoes, Shorts, Short-sleeved shirts, Sport shirts, Sweaters, Sweatpants, Sweatshirts, Swim caps, T-shirts, Uniforms, Vests, Waterproof jackets, Wind shirts, Windbreakers in Int'l Class 25<br>First Use in Commerce:  07-06-2009 |

17.     Through the USPTO, the Red Cross also owns numerous United States federal registrations for the word mark RED CROSS and AMERICAN RED CROSS in connection with medical, health and safety services, including, *inter alia,* U.S. Registration Nos. 2,820,772 for the mark RED CROSS in Int'l Class 41 (educational services for health and safety); 2,818,966 for the mark RED CROSS in Int'l Classes 36 and 43 (support to disaster victims); 2,740,132 for the mark RED CROSS in Int'l Class 36 (charitable fundraising); 2,752,477 for the mark RED CROSS in Int'l Class 44 (blood banks); 2,818,965 for the mark AMERICAN RED CROSS in Int'l Class 41 (educational services for health and safety); 2,818,964 for the mark AMERICAN RED CROSS in Int'l Classes 36 and 43 (support to disaster victims); 2,740,131 for the mark AMERICAN RED CROSS in Int'l Class 36 (charitable fundraising); 2,740,130 for the mark AMERICAN RED CROSS in Int'l Class 44 (blood banks); and 5,793,663 for the mark AMERICAN RED CROSS in Int'l Class 25 (clothing).

| Mark | Registration No.<br>Registration Date | Products/Services<br>First Use in Commerce |
|---|---|---|
| RED CROSS | 2820772<br>03/09/2004 | Educational services, namely training in the areas of health and safety in Int'l Class 41<br>First Use in Commerce:  12-31-1903 |
| RED CROSS | 2818966<br>03/02/2004 | Charitable services, namely, providing financial assistance and support to victims of disasters and providing information consultation related thereto in Int'l Class 36<br>First Use in Commerce:  12-31-1881<br><br>Charitable services, namely, providing relief and support to victims of disasters by providing food and temporary housing shelters and information and consultation related thereto in Int'l Class 43<br>First Use in Commerce:  12-31-1881 |
| RED CROSS | 2752477<br>08/19/2003 | Blood banks, collection and preservation of human blood in Int'l Class 44<br>First Use in Commerce:  08-31-1937 |
| RED CROSS | 2740132<br>07/22/2003 | Charitable fundraising in Int'l Class 36<br>First Use in Commerce:  12-31-1881 |
| AMERICAN RED CROSS | 2818964<br>03/02/2004 | Charitable services, namely, providing financial assistance and support to victims of disasters and providing information consultation related thereto in Int'l Class 36<br>First Use in Commerce:  12-31-1881<br><br>Charitable services, namely, providing relief and support to victims of disasters by providing food and temporary housing shelters and information and consultation related thereto in Int'l Class 43<br>First Use in Commerce:  12-31-1881 |
| AMERICAN RED CROSS | 2818965<br>03/02/2004 | Educational services, namely training in the areas of health and safety in Int'l Class 41<br>First Use in Commerce:  12-31-1903 |
| AMERICAN RED CROSS | 2740130<br>07/22/2003 | Blood banks, collection and preservation of human blood in Int'l Class 44<br>First Use in Commerce:  08-31-1937 |

| Mark | Registration No. Registration Date | Products/Services First Use in Commerce |
|---|---|---|
| AMERICAN RED CROSS | 2740131 07/22/2003 | Charitable fundraising in Int'l Class 36 First Use in Commerce:  12-31-1881 |
| AMERICAN RED CROSS | 5793663 07/02/2019 | Clothing, namely, Aprons, Baby bodysuits, Baseball caps and hats, Beanies, Blazers, Boots, Bucket hats, Cap visors, Caps, Cardigans, Down jackets, Dress shirts, Fleece jackets, Fleece vests, Hats, Hoodies, Jackets, Knit jackets, Knitted caps, Long-sleeved shirts, Neck gaiters, Neckties, Pants, Polo shirts, Pullovers, Quilted vests, Scarfs, Shell jackets, Shirts, Shoes, Shorts, Short-sleeved shirts, Sport shirts, Sweaters, Sweatpants, Sweatshirts, Swim caps, T-shirts, Uniforms, Vests, Waterproof jackets, Wind shirts, Windbreakers in Int'l Class 25 First Use in Commerce:  1914 |

18.     U.S. Registration Nos. 2740113; 2771239; 2797013; 2818967; 4319642; 2820772; 2818966; 2752477; 2740132; 2818964; 2818965; 2740130; and 2740131 have become incontestable pursuant to 15 U.S.C. § 1065.

19.     The Red Cross also owns longstanding nationwide common law rights to the Red Cross Marks in conjunction with numerous services and goods, including but not limited to training, education, medical, health, and emergency services.  As described above, throughout its history, the Red Cross has continuously and substantially exclusively used the Red Cross Marks in connection with its congressionally chartered, charitable mission to provide a wide range of, *inter alia*, health, medical and humanitarian services including training in lifesaving skills and sills needed to prevent, prepare for and respond to emergencies, and other health and safety services across the nation for over 100 years. The Red Cross has used and also uses the Red

Cross Marks on or in connection with various training supplies and products that it offers for sale to the public in the United States.

20.     The Red Cross has provided its services and goods to tens of millions of people throughout the United States by and under the Red Cross Marks.

21.     To further its humanitarian objectives, the Red Cross has also expended and continues to expend significant amounts of money and other resources to promote in the United States its services and goods in connection with the Red Cross Marks.  Indeed, the Red Cross considers the Red Cross Marks to be among its most valuable assets. The Red Cross Marks serve as the most important trademarks in Red Cross's family of trademarks.

22.     Because Congress has granted the Red Cross exclusive rights to use the words "Red Cross" and the Red Cross Symbol for any and all goods and services, because international humanitarian law places strict limitations on the use of the words "Red Cross" and Red Cross Symbol through the Geneva treaties, and because the Red Cross has engaged in continuous, consistent, active, and substantial use and promotion of the Red Cross Marks for over a century, the United States public has come to associate the Red Cross Marks exclusively with the Red Cross and its humanitarian efforts via the services and products it offers and the Red Cross has established significant goodwill with respect to the Red Cross Marks that inures to the benefit of the Red Cross.

23.     The Red Cross markets and provides courses in lifesaving skills such as CPR, first aid, and lifeguarding to the public under the Red Cross Marks.  In some instances, it authorizes other companies to provide Red Cross training courses to the public, using the Red Cross Marks, and course materials including instructor and participant manuals and other teaching materials and resources created by Red Cross and offered as Red Cross training ("Red Cross Training

Courses"), pursuant to Licensed Training Provider Agreements by which the other companies agree to meet a variety of conditions including payment of fees and certification by Red Cross of instructors utilized for Red Cross Training Courses ("Licensed Training Providers").  Licensed Training Providers submit information to the Red Cross on an internet portal operated and supported by Red Cross for this purpose regarding students who successfully complete the Red Cross Training Courses. The Red Cross then issues course completion certificates bearing the Red Cross Marks to these students based on the submissions of Licensed Training Providers.

24.     WIOS entered into a Licensed Training Provider Agreement ("the Agreement") with the Red Cross, on or about March 3, 2017, whereby the Red Cross granted WIOS a limited and non-exclusive license to use the Red Cross trade names, trademarks, and other copyrighted and proprietary material for the purpose of offering and providing Red Cross Training Courses to the public and obtaining completion certificates from Red Cross of WIOS students successfully completing Red Cross Training Courses.

25.     Pursuant to the Agreement, WIOS agreed to pay the Red Cross fees for, *inter alia*, the use of the aforementioned Red Cross property with respect to training courses WIOS would provide.

26.     WIOS breached the Agreement by not making the requisite payments.

27.     WIOS owes the Red Cross nearly $250,000 pursuant to the Agreement.

28.     On October 17, 2018, the Red Cross terminated the Agreement with WIOS because of WIOS's breaches of the Agreement.

29.     As such, as of October 18, 2018, WIOS no longer had any rights to provide any Red Cross courses, hold itself out as a licensed provider of Red Cross training, use any Red Cross training materials, represent that completion of any WIOS course would result in the

issuance of Red Cross completion certificates, or use any Red Cross intellectual property including without limitation, Red Cross Marks.

30.    Nevertheless, WIOS continues to hold itself out as licensed provider of Red Cross training courses and continues to use the Red Cross Marks in providing training services to the public.

31.    The Red Cross tried repeatedly to get WIOS to, *inter alia*, cease any and all use of the Red Cross Marks, cease WIOS's representations to prospective and current students that it was an authorized or licensed provider of Red Cross courses, and cease providing certifications of completion bearing the Red Cross Marks to its students.

32.    WIOS represented to the Red Cross that it would cease all such activities.

33.    Nevertheless, WIOS has continued to hold itself out as an authorized provider of Red Cross courses to current and prospective students.  It has continued to accept student registrations and payments for these courses, and it has provided at least one individual who completed the course with a fraudulent Red Cross completion certificate.  In other words, it has used the Red Cross Marks for its own improper business purposes.

34.    In July 2019, it came to the Red Cross's attention that WIOS intends to and/or currently contracts with independent instructors who are trained and authorized by Red Cross to provide Red Cross CPR training courses.  WIOS, without authorization, has paid at least one instructor for a course and has issued a falsified Red Cross certification in exchange for a profit.

35.    Upon information and belief, WIOS continues to use the Red Cross Marks in order to confuse and deceive actual and potential customers that WIOS is affiliated with or are otherwise associated with or sponsored by Red Cross, and obtain financial gain for itself.

36.     WIOS acted and continues to act with full knowledge of the Red Cross's prior rights in and to the Red Cross Marks.

37.     WIOS's activities violate various laws, harms and tarnishes the reputation of the famous Red Cross Marks, cause confusion in the marketplace, and deceive consumers.

**COUNT I**
**Trademark Infringement**
**Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

38.     The Red Cross repeats and realleges each and every allegation set forth in Paragraphs 1 through 37 of this Complaint.

39.     As set forth above, the Red Cross owns numerous federally registered trademarks for the Red Cross Symbol and the word mark RED CROSS and AMERICAN RED CROSS, which registrations are valid and subsisting.

40.     The Red Cross has continually used the Red Cross Marks as source identifiers in connection with its products and services in interstate commerce within the United States and around the world. The Red Cross previously granted WIOS a license to use these marks to offer Red Cross training courses, but that license terminated in October 2018.

41.     Without authorization or consent of the Red Cross, WIOS renders its services and provides related advertising thereto to the general public using the Red Cross name and Red Cross Symbol.  Furthermore, WIOS is claiming a Red Cross affiliation where none exists.

42.     WIOS's unauthorized use of the infringing marks is likely to cause confusion, mistake, and deception among the general public as to the origin of WIOS services, or as to whether WIOS is sponsored by, affiliated with, or otherwise connected to the Red Cross, constituting trademark infringement in violation of  15 U.S.C. § 1114(1).

16

43.     By using the Red Cross Marks in connection with training courses, without the Red Cross's authorization, WIOS is depriving the Red Cross of its exclusive right to control and benefit from its trademarks. If permitted to continue, WIOS's actions will nullify the Red Cross's right to exclusive use of its trademarks, free from infringement, and will have a substantial and adverse effect on the Red Cross.

44.     Upon information and belief, the acts of WIOS are calculated to deceive the general public into purchasing WIOS's services in the mistaken belief that WIOS's services are sponsored or approved by, connected with, or rendered under the supervision of the Red Cross.

45.     By using the Red Cross's registered trademarks and confusingly similar designations thereto, and by offering services to the general public in connection with such marks notwithstanding WIOS's knowledge as to the unauthorized use, WIOS has intentionally and knowingly infringed on the Red Cross's rights.

46.     As a result of the foregoing acts by WIOS, the Red Cross has suffered damages and WIOS has been unjustly enriched.

47.     Unless permanently enjoined, the acts of WIOS alleged herein will continue to cause the Red Cross irreparable injury that cannot adequately be calculated or compensated by money damages.

**COUNT II**
**Infringement, False Designation of Origin, Passing Off, and Unfair Competition**
**Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

48.     The Red Cross repeats and realleges each and every allegation set forth in Paragraphs 1 through 47 of this Complaint.

17

49.     WIOS's actions, as described above, are likely to cause confusion, mistake, or deceive as to the origin, sponsorship, or approval of WIOS, its services, and/or its commercial activities by or with the Red Cross.  WIOS's actions, therefore, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50.     The Red Cross has been damaged by WIOS's activities and conduct. As a result of the foregoing acts of WIOS, WIOS has profited thereby and, unless its conduct is enjoined, the Red Cross's reputation and goodwill will continue to suffer irreparable injury that cannot be adequately calculated or compensated by money damages.

51.     By using the Red Cross's trademarks by and through the infringing marks in connection with the rendering to the general public of services, WIOS has intentionally and knowingly infringed the Red Cross's rights.

## COUNT III
### Trademark Dilution
### Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

52.     The Red Cross repeats and realleges each and every allegation set forth in Paragraphs 1 through 51of this Complaint.

53.     The Red Cross Marks are famous, as that term is used in 15 U.S.C. § 1125(c), and were famous before WIOS's first uses of the marks, based on, among other things, the inherent distinctiveness and federal registration of the Red Cross's Marks, and the extensive nationwide use, advertising, promotion, and recognition of these Marks.

54.     The Red Cross Marks are widely recognized by the general public in the United States as a source identifier and particularly as a mark belonging to the Red Cross.

55.     As stated herein, through extensive use, sales, advertising, promotion and continuity, the Red Cross Symbol and the literal RED CROSS and AMERICAN RED CROSS word mark are distinctive, within the meaning of 15 U.S.C. § 1 125(c)(l).

56.     WIOS's use of the infringing marks has diluted, or is likely to dilute, by blurring or tarnishment, the distinctive quality of the famous Red Cross Marks in violation of 15 U.S.C. § 1125(c).

57.     Upon information and belief, the acts of WIOS are calculated, with willful intent, to dilute the Red Cross Marks.

58.     As a result of the foregoing acts, the Red Cross has suffered damages and WIOS has been unjustly enriched.

59.     The Red Cross has been, and absent injunctive relief, will continue to be, irreparably harmed by WIOS's unlawful conduct. Unless permanently enjoined, the acts of WIOS alleged herein will continue to cause the Red Cross irreparable injury that cannot be adequately calculated or compensated by money damages.

60.     WIOS's acts resulting in actionable dilution as alleged above entitle the Red Cross to an injunction pursuant to 15 U.S.C. § 1125(c)(l).

**COUNT IV**
**Trademark Infringement**
**Under Md. Code Bus. Reg. § 1-414 *et seq.***

61.     The Red Cross repeats and realleges each and every allegation set forth in Paragraphs 1 through 60 of this Complaint.

62.     WIOS's aforementioned use, without the consent of the Red Cross, of reproductions and/or colorable imitations of the Red Cross's trademarks in connection with the sale, offering for sale, and/or advertising of goods or services, are likely to cause confusion, or to

deceive as to the origin of the goods or services, and thus constitute trademark infringement in violation of Md. Code Bus. Reg. § 1-414 *et seq*.

63.     As a result of the foregoing acts by WIOS, the Red Cross has suffered damages and WIOS has been unjustly enriched.

64.     Unless permanently enjoined, the acts of WIOS alleged herein will continue to cause the Red Cross irreparable injury that cannot adequately be calculated or compensated by money damages.

**COUNT V**
**Trademark Infringement**
**Under Maryland Common Law**

65.     The Red Cross repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 of this Complaint.

66.     WIOS's actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of WIOS with the Red Cross, or as to the origin, sponsorship, or approval of WIOS, its services, and its commercial activities by or with the Red Cross, such that WIOS's acts constitute infringement of WIOS's proprietary rights in its trademarks, misappropriation of Red Cross's goodwill in those marks, and unfair competition under Maryland common law.

67.     WIOS's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce, which, in commercial advertising and promotion, materially misrepresent the nature, characteristics, and qualities of WIOS's services and constitute false and deceptive advertising under Maryland common law.

68.     As a result of the foregoing acts by WIOS, the Red Cross has suffered damages and WIOS has been unjustly enriched.

20

69.     Unless permanently enjoined, the acts of WIOS alleged herein will continue to cause the Red Cross irreparable injury that cannot adequately be calculated or compensated by money damages.

### COUNT VI
### Unfair Trade Practices
### Under Maryland Consumer Protection Act

70.     The Red Cross repeats and realleges each and every allegation set forth in Paragraphs 1 through 69 of this Complaint.

71.     WIOS has engaged in unfair or deceptive trade practices by making, in the course of promoting and providing services using the infringing marks in competition with the Red Cross and other representations and actions, including the issuing of fraudulent course certifications, which have the capacity, tendency, or effect of deceiving or misleading consumers.

72.     WIOS has engaged in unfair or deceptive trade practices by representing to consumers, in the course of promoting and providing services using the infringing marks that WIOS services have a source, sponsorship, and characteristic (*i.e.*, sponsored by and related to the Red Cross) that they do not have and that WIOS's services are of a standard, quality, grade, style, and model which they are not.

73.     WIOS's false and misleading representations and deceptive conduct are material in that the same have caused and are likely to cause consumers to be deceived as to the source, sponsorship, characteristics, status, affiliation, connection, standard, or quality of the Red Cross's services.

74.     By reason of WIOS's unfair and deceptive trade practices as defined by Section 13-301 of Maryland's Consumer Protection Act, WIOS has violated Section 13-303 of Maryland's Consumer Protection Act.

75.     As a direct and proximate result of said unfair and deceptive trade practices, the Red Cross, as well as consumers, have sustained and are likely to continue to sustain damages.

76.     The Red Cross has no adequate remedy at law.

77.     Pursuant to Maryland's Consumer Protection Act, he Red Cross is entitled to enjoin WIOS's unlawful conduct as well as to obtain damages and attorneys' fees.

## COUNT VII
## Breach of Contract

78.     The Red Cross incorporates herein by reference the allegations contained in paragraph 1 through 77 above.

79.     The Agreement between the Red Cross and WIOS is a valid and enforceable contract.

80.     The Red Cross performed all of its obligations under the Agreement with WIOS.

81.     WIOS breached the Agreement by failing to make timely payments to the Red Cross in accordance with the Agreement.

82.     The Red Cross has been damaged as a result of the failure by WIOS to pay the full amount due and owing under the terms of the Agreement in an amount of no less than $249,203.98.

## PRAYER FOR RELIEF

WHEREFORE, the Red Cross prays:

A.     For judgment that WIOS has:

(i.)     violated Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and that such violations have been willful pursuant to 15 U.S.C. § 1117;

(ii.)     violated Section 43(c) of the Lanham Act, 15 U S.C. § 1125(c) and that such violations have been willful pursuant to 15 U.S.C. § 1117;

(iii.)     violated 18 U.S.C. § 706;

(iv.)     engaged in trademark infringement and deceptive trade practices in violation of the statutory and common law of Maryland and that such violations have been willful; and,

(v.)     breached the Agreement.

B.     For an injunction permanently restraining and enjoining WIOS, their officers, agents, servants, employees, attorneys, parent companies and affiliates, successors and assigns and subsidiaries and all those persons in active concert or participation therewith, from:

(i.)     using the Red Cross's trademarks, any imitation or legal equivalent thereof, or any other mark or logo which is confusingly similar to the Red Cross Symbol and the Red Cross Name and from continuing their unfair methods of competition and unfair and deceptive acts and practices;

(ii.)     committing any acts calculated to cause the public to believe that WIOS and/or any of WIOS's services are associated, affiliated or sponsored by the Red Cross or are authorized or approved by the Red Cross, in whole or in part;

(iii.)     otherwise competing unfairly with the Red Cross in any manner, including without limitation, using a false designation of origin or using a mark that will dilute the Red Cross Marks; and

(iv.)     attempting, causing, or assisting any of the above-described acts.

C.       For an order requiring WIOS to file with the Court and serve on the Red Cross within thirty (30) days after service of the injunction a written report under oath pursuant to 15 U.S.C. § 1116, setting forth in detail the manner and form in which WIOS has complied with the injunction, including but not limited to describing in detail WIOS's cessation of use of the infringing marks on all websites and in the use of WIOS's services.

D.       For an award of the damages suffered by the Red Cross and an award of profits, damages, costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 USC § 1117, and by the common and statutory law of the State of Maryland, such damages and profits to be trebled on the ground that WIOS's misconduct has been willful, deliberate, knowing, intentional and in bad faith.

E.       For an order requiring WIOS to disseminate corrective advertisements in a form and frequency approved by the Court to acknowledge their violations of, *inter alia*, Sections 43(a) and (c) of the Lanham Act and the common and statutory law of the State of Maryland.

F.       For an award of punitive damages in an amount to be determined at trial for WIOS's unlawful conduct in violation of Maryland law.

G.       For an order pursuant to 15 U.S.C. § 1118, and by the common and statutory law of Maryland, requiring WIOS to deliver up for destruction all items, advertising, and other materials in WIOS's possession bearing the infringing marks, the Red Cross Symbol or any other mark or logo that would violate the injunction entered herein.

H.       For an award of $249,203.98 for the breach of contract described herein.

I.       For an award of prejudgment interest on the amount awarded and post-judgment interest until paid, to the maximum extent allowed by law.

J.      That the Red Cross be awarded such other and further relief, at law or in equity, as the Court may deem just and proper.

## JURY DEMAND

The Red Cross hereby demands a trial by jury on all claims and issues so triable, pursuant to Federal Rule of Civil Procedure 38.

DATED:  August 12, 2019                    Respectfully submitted,


                                           /s/ Jeffrey W. Larroca
                                           Jeffrey W. Larroca [Bar #22735]
                                           Rosa S. Trembour [Bar #20739]
                                           ECKERT SEAMANS CHERIN & MELLOTT, LLC
                                           1717 Pennsylvania Avenue, N.W.
                                           12th Floor
                                           Washington, DC  20006
                                           T:  (202) 659-6646/6609
                                           F:  (202) 659-6699
                                           E:  jlarroca@eckertseamans.com
                                           E:  rtrembour@eckertseamans.com

                                           *Counsel for The American National Red Cross*